**In re BUZZWORM, INC., EIN 84–1049134, Debtor.**

**Bankruptcy No. 93–22771–SBB. MC No. PAP–1.**

United States Bankruptcy Court, D. Colorado.

Dec. 27, 1994.

Robert C. Ripple, Asst. Atty. Gen., Office of Atty. Gen., Denver, CO, for State of Col., Dept. of Revenue.

Matthew D. Skeen, Phillip A. Pearlman, Denver, CO, for Janice A. Steinle, Chapter 7 Trustee.

## OPINION AND ORDER GRANTING, IN PART, MOTION TO MODIFY MARCH 13, 1994 ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court on the Chapter 7 Trustee's motion to modify, or effectively void, a cash collateral agreement which grants a tax lien creditor, the State of Colorado, summary relief from the automatic stay on conversion of the Debtor's Chapter 11 case to Chapter 7.[1] The Trustee opposes granting the lien creditor automatic

---

1. This matter came before the Court for a hearing on October 20, 1994, pursuant to the following pleadings: (a) Chapter 7 Trustee's Motion to Modify March 16, 1994 Order Approving Joint Stipulation Regarding Use of Cash Collateral, filed June 27, 1994; (b) State of Colorado Department of Revenue's Response to Motion to Modify March 16, 1994 Order Approving Joint Stipulation Regarding Use of Cash Collateral, filed August 12, 1994; and (c) Trustee's Reply to Colorado's Response to Trustee's Motion to Modify March 16, 1994 Order Approving Joint Stipulation Regarding Use of Cash Collateral, filed August 19, 1994.

relief from the stay principally on the grounds that she is improperly bound to a pre-conversion Chapter 11 agreement.

The Court, having heard argument in open Court, having reviewed the file, and being fully advised in the premises, issues this Opinion and Order. This issue is one of first impression before the Bankruptcy Court.

The central questions before the Court arise out of a Cash Collateral Agreement ("Agreement") entered into between the predecessor Chapter 11 Debtor-in-Possession in this case and a lien creditor, the State of Colorado Department of Revenue ("Lien Creditor," "State" or "Colorado Department of Revenue"). The Agreement was entered into during the pendency of the Chapter 11 case, in settlement of the Lien Creditor's Motion for Relief from Stay. One of the negotiated provisions of the Agreement grants the State summary relief from the automatic stay upon Debtor-in-Possession's default, or conversion of the case to Chapter 7. Following conversion of the case to Chapter 7, the State moved, by affidavit, to enforce the provisions of the Agreement providing the State summary relief from the automatic stay. The Chapter 7 Trustee objected, arguing that the Chapter 11 Agreement cannot be, and is not, binding upon the Trustee. The Trustee maintains that (1) enforcement of the Cash Collateral Agreement granting the tax lien creditor summary relief from the stay would violate the Chapter 7 distribution provisions of Sections 724(b) and 726 and, (2) the secured creditor's lien is subject to, and bound by, the distribution scheme of Chapter 7.

The Court concludes that, as a matter of law, (1) a Chapter 7 trustee may be bound by a predecessor Chapter 11 debtor-in-possession's cash collateral agreement, (2) a tax lien creditor, under the right circumstances, may avoid, by agreement, the distribution scheme under Section 724(b), but (3) this particular Agreement is not legally sufficient such as to bind the Chapter 7 trustee and allow the tax lien creditor summary relief from the automatic stay, thus avoiding the distribution provisions of Chapter 7.

## I. FINDINGS OF FACT

1. On November 30, 1993, an Involuntary Petition was filed against the Debtor pursuant to 11 U.S.C. § 303 under Chapter 7 of the Bankruptcy Code.

2. On December 23, 1993, the involuntary Chapter 7 case was converted to a voluntary Chapter 11 proceeding.

3. On January 26, 1994, the Colorado Department of Revenue filed a claim for prepetition state wage withholding taxes, penalties, and interest to November 30, 1993, and gave notice that the State claimed a first priority lien on all of Debtor's petition date property pursuant to state law, C.R.S. § 39-22-604(7)(a).

4. On February 11, 1994, Debtor-in-Possession and the Colorado Department of Revenue entered into a Joint Stipulation Regarding Use of Cash Collateral ("Cash Collateral Agreement").

5. Under the Cash Collateral Agreement, which by its terms required approval by this Court, the State gave its consent to Debtor's use of its cash collateral as long as certain conditions were met. The Agreement provided, in pertinent part, as follows:

4. The State is a secured creditor of the Debtor, having a statutory lien for unpaid pre-petition withholding taxes under C.R.S. § 39-22-604(7) in the above-recited assets and their proceeds. The pre-petition debt owed to the State is $15,921.00. Post-petition interest has accrued on this amount since December 1, 1993. The State is senior to all other lienholders.

.    .    .    .    .

6. The State has consented to the Debtor's use of cash collateral under the following conditions, to which the Debtor has agreed, subject to Court approval:

(a) The Debtor shall grant the State a replacement lien on its post-petition inventory and accounts receivable;

(b) The Debtor acknowledges that on July 15, 1994, the amount of principal and post-petition interest owing to the State will be $16,717.00;

.    .    .    .    .

(g) In the event of a default hereunder, which remains uncured after a ten-day written notice to the Debtor and its attorneys and/or in the event this case is converted to a Chapter 7 proceeding, then the State shall be entitled to relief from the automatic stay upon the filing of an Affidavit by the State evidencing such default or conversion. . . .

Agreement, at pp. 1–2.[2]

6. Paragraph 6.(g) of the Cash Collateral Agreement, quoted above, provided that in the event the Chapter 11 case was converted to a Chapter 7 case, the State would be entitled to automatic relief from the stay upon the filing with this Court of an affidavit evidencing such default or conversion.

7. On February 28, 1994, Debtor's counsel sent Notice Pursuant to Local Rule 202 [Rule 4001, Fed.R.Bankr.P.] of Joint Stipulation Regarding Use of Cash Collateral to all parties-in-interest. The first paragraph of the Notice stated as follows:

NOTICE IS HEREBY GIVEN that a Joint Stipulation Regarding Use of Cash Collateral between Debtor and the State of Colorado has been filed with this Court requesting approval by the Debtor to use cash collateral and granting the State of Colorado a post-petition lien in inventory and accounts receivable. The Stipulation further provides for a monthly payment to the State of Colorado and grants the State immediate relief from the automatic stay in the event of a default. A copy of the Joint Stipulation is attached for your review.

February 28, 1994, Notice Pursuant to Local Rule 202, p. 1.

8. No objections to the Cash Collateral Agreement were filed. On March 16, 1994, this Court entered its Order approving the Agreement between the Chapter 11 Debtor and the State ("March 16, 1994 Order").

9. On April 19, 1994, the Debtor filed its Motion to Convert to Chapter 7.

10. On April 25, 1994, this Court entered its Order Converting Case Under Chapter 11 to Case Under Chapter 7.

11. On June 13, 1994, the Affidavit of G. Grant Gordon, Tax Compliance Agent, Colorado Department of Revenue, was filed herein, advising the Court (a) of the conversion to a case under Chapter 7, (b) that the State was entitled to relief from the stay imposed by 11 U.S.C. § 362(a), and (c) that the State intended to distrain, seize, and sell so much of Debtor's personal property as would be required to satisfy Debtor's pre-petition Colorado tax obligations.

12. On June 27, 1994, Janice A. Steinle, Chapter 7 Trustee, filed Chapter 7 Trustee's Motion to Modify March 16, 1994 Order Approving Joint Stipulation Regarding Use of Cash Collateral ("Trustee's Motion"), claiming the Cash Collateral Agreement violates Section 724(b) of the Code and improperly attempts to terminate, or to waive, rights of the Chapter 7 Trustee held pursuant to Section 724(b).

13. On August 12, 1994, the State of Colorado Department of Revenue's Response to Motion to Modify March 16, 1994 Order Ap-

---

2. Other pertinent provisions of the Cash Collateral Agreement include:

3. The Debtor publishes a magazine, entitled "Earth Journal". The Debtor's assets include accounts, accounts receivable, contract rights, inventory, miscellaneous furnishings and equipment, and other intangible property. The book value of these [Debtor] assets is approximately $430,000.

. . . . .

5. The Debtor must use the cash collateral received in the ordinary course of business to reorganize successfully.

. . . . .

(c) The Debtor shall make payments of $900 per month to the State to commence July 15, 1994;

(d) The Debtor shall make a balloon payment on the unpaid balance of this indebtedness on July 15, 1995;

(e) Interest shall accrue at the rate of 8% per annum;

(f) Payments shall be applied first to the principal amount of the indebtedness;

. . . . .

(h) The Debtor's plan of reorganization must provide for the same or more favorable treatment of the State's claim. . . .

Agreement, at pp. 1–2.

proving Joint Stipulation Regarding Use of Cash Collateral ("State's Response") was filed, asserting that the Cash Collateral Agreement is enforceable against the Trustee, and that (a) the March 16, 1994 Order was a final order which should not, and cannot now, be modified, (b) Section 724(b) affects only distribution priorities in certain Chapter 7 cases, and (c) Section 724(b) does not serve to void tax liens.

14. On August 19, 1994, the Trustee's Reply to Colorado's Response to Trustee's Motion to Modify March 16, 1994 Order Approving Joint Stipulation Regarding Use of Cash Collateral ("Trustee's Reply") was filed, reasserting that permitting the State to have relief from stay would be enforcement of a cash collateral agreement in violation of Section 724(b).

15. On October 20, 1994, a hearing was conducted regarding the Trustee's Motion, the State's Response, and the Trustee's Reply.

16. According to the Trustee, the Chapter 7 Estate is administratively insolvent. Thus, if the Trustee is allowed to sell the assets securing the State's pre-petition tax claim and to distribute the proceeds pursuant to Sections 724(b) and 726, the State will receive nothing on its secured tax claim. The proceeds would be used to pay some administrative expenses, including those of three law firms involved in the Chapter 11 case, each of whom would receive a small percentage of the total fees requested.

17. Following argument, this Court took the matter under advisement.

## II. *DISCUSSION*

■ The questions presented in this case are:

1. Is a Chapter 7 trustee bound by and subject to a cash collateral agreement entered into between a predecessor Chapter 11 debtor-in-possession and a lien creditor, which grants the creditor automatic, or summary, relief from the stay upon default or conversion of the case to Chapter 7?

2. Can a cash collateral agreement between a Chapter 11 debtor-in-possession and a tax lien creditor, modify the statutory provisions of the Code, 11 U.S.C. § 724(b)?

3. Is the Cash Collateral Agreement between the State of Colorado and the Chapter 11 Debtor-in-Possession, in the instant case, binding upon the Chapter 7 Trustee?

The Court will address each of these questions separately.[3]

## A. IS A CHAPTER 7 TRUSTEE BOUND BY AND SUBJECT TO A CASH COLLATERAL AGREEMENT ENTERED INTO BETWEEN A PREDECESSOR CHAPTER 11 DEBTOR–IN–POSSESSION AND A LIEN CREDITOR WHICH GRANTS THE CREDITOR AUTOMATIC, OR SUMMARY, RELIEF FROM THE STAY UPON DEFAULT OR CONVERSION OF THE CASE TO CHAPTER 7?

■ It is a well recognized and widely accepted principle that, under appropriate circumstances, stipulated agreements, such as a cash collateral agreement, are favored. They tend to:

'[S]how cooperation between creditors and the estate which should be requited. They reduce costs otherwise incurred in litigation and permit a constructive allocation of resources. They lessen the judicial burden of administering the estate, an important principal of the Reform Act.'

*In re Blehm Land & Cattle Co.*, 859 F.2d 137, 139 (10th Cir.1988), *quoting In re*

---

**3.** Rule 9024, Fed.R.Bankr.P., and Rule 60(b), Fed.R.Civ.P., permit this Court to relieve a party from a final order for five particular reasons, and one generalized "catch-all" reason. Both parties agreed in argument that modification of the March 16, 1994 Order cannot be justified on the basis of any of those five particular reasons. The "catch-all" clause, Rule 60(b)(6), enables this Court to vacate or modify a judgment "whenever such action is appropriate to accomplish justice." *Klapprott v. United States*, 335 U.S. 601, 614–15, 69 S.Ct. 384, 390, 93 L.Ed. 266 (1949). This Court concludes that, for the reasons set forth herein, justice does demand that the subject March 16, 1994 Order Approving the Joint Stipulation Regarding Use of Cash Collateral be modified, in part.

*Callister*, 15 B.R. 521, 531–532 (Bankr. D.Utah 1981).

A Chapter 11 debtor-in-possession can enter into a binding agreement with a secured creditor, which will be enforceable against a subsequently appointed Chapter 7 trustee. *Armstrong v. Norwest Bank, Minneapolis, N.A.*, 964 F.2d 797, 801 (8th Cir.1992); *In re Bettis*, 97 B.R. 344, 347 (Bankr.W.D.Tex. 1989); *In re Monument Record Corp.*, 71 B.R. 853, 861 (Bankr.M.D.Tenn.1987).

Stipulated agreements involving cash collateral, such as the one in this case, have been specifically upheld. In *Armstrong*, 964 F.2d at 800, the Eighth Circuit held that a cash collateral agreement was a binding contract and "that the [Chapter 7] Trustee was bound by the stipulation to the same extent as the predecessor debtor-in-possession."

> First, it is axiomatic that the Trustee is bound by the acts of the debtor-in-possession ... in entering into the three stipulations. It is equally self-evident that the Trustee is bound by the decisions of the courts regarding the stipulations, even absent his presence at those proceedings. We cannot entertain any suggestion to the contrary, as the result would be chaos among debtors-in-possession and their creditors. Creditors must be able to deal freely with debtors-in-possession, within the confines of the bankruptcy laws, without fear of retribution or reversal at the hands of a later appointed trustee.
>
> *Id.* at 801.

Agreements granting adequate protection to a secured creditor in a Chapter 11 case, and granting *ex parte* relief from stay to the creditor, which are binding on the successor Chapter 7 trustee, have also been upheld. In *Monument Record*, 71 B.R. at 861, the court upheld the validity of an agreement entered into by a creditor and the debtor-in-possession in a Chapter 11 case, which recognized the creditor's valid security interest and granted relief from stay. The *Monument Record* court held that a Chapter 11 debtor-in-possession assumes the role of a Chapter 11 trustee, as defined pursuant to Rule 9001, Fed.R.Bankr.P., and 11 U.S.C. § 1107. Thus, like a trustee, a debtor-in-possession is entitled to attempt reorganization, to negotiate agreements with creditors, and to take other actions in accordance with the Bankruptcy Code.

The legislative history to § 1107(a) confirms the alignment of trustees and debtors-in-possession: "This section places a debtor in possession in the shoes of a trustee in every way. The debtor is given the rights and powers of a chapter 11 trustee. He is required to perform the functions and duties of a chapter 11 trustee (except the investigative duties). He is also subject to any limitations on a chapter 11 trustee, and to such other limitations and conditions as the court prescribes." [Citation omitted.]

*Monument Record*, 71 B.R. at 861.

In *Bettis*, 97 B.R. at 347, the court relied on an earlier decision from the Eastern District of Pennsylvania upholding the enforceability of a Chapter 11 stipulation against a Chapter 7 trustee, as a basis for enforcing such an agreement:

> In *Philadelphia Athletic Club, Inc.*, 17 B.R. 345 (Bankr.E.D.Pa.1982) ... Judge Goldhaber rather easily found that the trustee was indeed bound because (i) the stipulation had expressly provided that it was binding on "successors and assigns" and (ii) "[t]o hold that such a stipulation is not binding on the estate after the appointment of a trustee would greatly impair the ability of the debtor in possession to conduct its business because it would discourage third parties from dealing with the debtor in possession ... [a result which is] inconsistent with the purpose of Chapter 11 of the Code to allow the debtor in possession to conduct its business and formulate a successful plan of reorganization if possible."

*Bettis*, 97 B.R. at 347, *quoting, In re Philadelphia Athletic Club*, 17 B.R. 345, 347 (Bankr.E.D.Pa.1982).

In addition to the justification for debtor-in-possession agreements being made binding on subsequent Chapter 7 trustees, as cited in *Philadelphia Athletic Club*. *Bettis* noted additional justification which a court may invoke in determining whether a Chap-

ter 11 stipulation should be enforceable and binding on the Chapter 7 trustee.

[I]t is clear that the Trustee must be bound by the stipulation of the DIP. Here there was full notice, extensive negotiation, reliance on the settlement by the secured creditor, no ambiguity in the stipulation itself, no allegation of fraud underlying the original settlement, and no indication that the DIP was removed for fraud or incompetent management.

*Bettis*, 97 B.R. at 347.

Based on the criteria, rationale, and decisions fixed in the applicable case law, a cash collateral or adequate protection agreement, or an agreement that otherwise clearly grants a lien creditor prospective summary relief from the automatic stay on default or conversion, may be binding and enforceable on a Chapter 7 trustee if:

(a) The agreement was freely negotiated and relied on when entered into by the parties.

(b) Timely, meaningful, and legally sufficient notice of the agreement was sent to creditors; reasonable opportunity for objection was provided; and, no objections were filed.

(c) The court approved the agreement.

(d) The agreement is not otherwise tainted by fraud, bad faith, misconduct, or legal insufficiency.

In addition to the case law, there are strong practical and policy reasons for enforcing such Chapter 11 agreements against a Chapter 7 trustee. Enforcing such agreements will encourage lien creditors to better cooperate with a reorganizing debtor and reduce pressure, early in the case, to litigate and, perhaps, prematurely "pull the plug" on a debtor. It will also force unsecured creditors, and other parties-in-interest, to promptly and more carefully evaluate the validity, perfection, and enforceability of secured creditor lien claims, to realistically measure early prospects of a debtor's successful reorganization, and more critically examine Chapter 11 "first day orders."[4]

4. (Cash collateral, adequate protection, relief from stay, and similar Rule 4001, Fed.R.Bankr.

■ The problems in granting immediate relief from stay, as illustrated by the Trustee's objection in this case, and the adverse consequences to creditors and a Chapter 7 trustee inherent in Chapter 11 cash collateral, or relief from stay, agreements, can be avoided, or at least ameliorated, if handled correctly at the time the agreement is submitted for creditor scrutiny and Court approval. The creditors can object to all or portions of such an agreement. The Court can (1) refuse to approve such an agreement, (2) decline to approve onerous or unfair provisions of such an agreement, (3) attach certain conditions, or qualifications, to creditor's rights on default or conversion, or (4) subject the parties to certain procedures or constraints before allowing *ex parte*, or summary, creditor action.

The point is, these agreements need not be onerous, burdensome, unfair or inequitable. They can be tailored, or carefully crafted, through creditor action and by Court order, to meet all parties' needs and best interests, under the circumstances.

This Court concludes that a Chapter 7 trustee may, under proper terms and conditions, be bound by and subject to a Chapter 11 stipulation regarding cash collateral and relief from the automatic stay entered into between a predecessor debtor-in-possession and a lien creditor.

B. CAN A CASH COLLATERAL AGREEMENT BETWEEN A CHAPTER 11 DEBTOR–IN–POSSESSION AND A TAX LIEN CREDITOR, MODIFY THE STATUTORY PROVISIONS OF THE CODE, 11 U.S.C. § 724(b)?

■ The Trustee maintains that granting relief from stay to this creditor, a tax lien creditor, would violate the Chapter 7 statutory distribution scheme embodied in Sections 724(b) and 726. The Trustee argues that, without qualification, a tax lien creditor should be subject to and bound by Section 724(b).

Section 724(b) provides as follows:

P., orders.)

(b) Property in which the estate has an interest and that is subject to a lien that is not avoidable under this title and that secures an allowed claim for a tax, or proceeds of such property, shall be distributed—

(1) first, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is senior to such tax lien;

(2) second, to any holder of a claim of a kind specified in section 507(a)(1), 507(a)(2), 507(a)(3), 507(a)(4), 507(a)(5), or 507(a)(6), of this title, to the extent of the amount of such allowed tax claim that is secured by such tax lien;

(3) third, to the holder of such tax lien, to any extent that such holder's allowed tax claim that is secured by such tax lien exceeds any amount distributed under paragraph (2) of this subsection;

(4) fourth, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is junior to such tax lien;

(5) fifth, to the holder of such tax lien, to the extent that such holder's allowed claim secured by such tax lien is not paid under paragraph (3) of this subsection; and

(6) sixth, to the estate.

11 U.S.C. § 724(b).

■ The purpose of Section 724(b) is to subordinate a perfected tax lien to senior liens and administrative expenses of the case (including wages, certain taxes and creditor expenses, and attorneys' fees). Certain priority claimants effectively step into the shoes of the lien tax creditor. (H.R.Rep. No. 595, 95th Cong., 1st Sess. 382 (1977)).

This case is administratively insolvent. There are insufficient unencumbered assets to pay costs of administration. Pursuant to Section 724(b), the Trustee wants to subordinate the State's tax lien claim and use the collateral securing that lien to pay, in part, certain of the Estate's administrative expenses.

The Court construes the State's somewhat abstruse position in the following terms. In its most simple form, the State lien creditor argues, persuasively, that a State tax lien has a unique character and the subordination of that tax lien to priority creditor claims, as provided for in Section 724(b), is not instituted, or triggered, until the time and circumstances are right. Essentially, the State maintains that the tax lien, like all other liens, does not automatically expire by virtue of the bankruptcy, it is a property right which survives a bankruptcy discharge, unless and until it is voided, or modified by operation of law, agreement, or affirmative act of the Court. Because the State argues, Section 724(b) does not become operative until distribution of Estate proceeds begins— and thus the tax lien claim is not subordinated to priority claims until distribution begins—the State, Debtor, creditor, parties-in-interest, and, of course, the Court, can, as with virtually all other claims, dispositively deal with the lien claim prior to conversion of the case to Chapter 7.

Section 724(b) directs how certain property "shall be distributed" in a Chapter 7 case. As part of Subchapter 11 of Chapter 7 of the Bankruptcy Code, Section 724(b) is only applicable in a case under Chapter 7. 11 U.S.C. § 103(b). Section 724(b) is clearly not applicable in Chapter 11 proceedings. *In re By–Rite Oil Co.*, 87 B.R. 905 (Bankr. E.D.Mich.1988); *In the Matter of Community Hospital of Rockland County*, 5 B.R. 7 (Bankr.S.D.N.Y.1979).

■ Valid and unavoided liens survive a discharge in bankruptcy and are, thereafter, customarily enforceable by the secured creditor. *See, Chambers Bank of Lyons v. Ray*, 804 F.2d 577 (10th Cir.1986). Section 724(b), likewise, does not automatically extinguish the secured status of an allowable tax lien. *In re Darnell*, 834 F.2d 1263, 1265 (6th Cir. 1987).

We conclude that the courts below erred in holding that § 724(b) of the Bankruptcy Code operates to divest tax liens of their status as secured claims. We reach this conclusion after thorough scrutiny of both the history of this section of the Code as well as its express language.

*Id.*, at 1265.

■ A debtor's assets are, generally, subject to and must first be used to satisfy perfected liens that attach to the property.

> In bankruptcy, a debtor's assets in the hands of the trustee are subject to all liens and encumbrances existing at the date of the bankruptcy (and which are not otherwise invalidated by law). Such liens are recognized as a charge upon the bankrupt's assets. Included among those liens that remain as encumbrances are statutory liens, such as the tax liens at issue here. [Footnote omitted.] Accordingly, as a general rule, if a lien is perfected, it must be satisfied out of the asset(s) it encumbers before any proceeds of the asset(s) are available to unsecured claimants, including those having priority (such as holders of administrative claims).

*Id.*, at 1265.

Courts have held that Section 724(b) is not effective and is not to be implemented unless and until it is determined that there are insufficient unencumbered assets available from the estate to pay the estate's administrative costs.

> As a result of the statutory scheme envisioned in section 724(b), the Chapter 7 trustee is required to exhaust all unencumbered funds of the estate in the payment of administrative expenses before resorting to the priming option of taxing administrative expenses against the proceeds encumbered by a taxing entity's lien. [Citation omitted.] The court is of the opinion that this conclusion is self-evident. If the estate contains enough unencumbered funds to satisfy administrative claims, no justification exists for priming a taxing entity's otherwise valid lien.

*In re Dowco Petroleum, Inc.*, 137 B.R. 207, 210 (Bankr.E.D.Tex.1992).

Section 724(b) did not, as a matter of law, cause a change in the nature of the State's security interest in Debtor's property upon conversion of the case to a case under Chapter 7. The State had the same right to seek relief from stay pursuant to Section 362(d) in Chapter 11 as any other secured creditor because Section 724(b)'s distribution scheme is not applicable in Chapter 11. This Court is not persuaded that the tax lien creditor should be routinely and unqualifiedly denied the benefit of its Chapter 11 right to seek relief from stay, or denied the benefit of its bargain derived from negotiations and compromise in giving up its potential right to relief from stay in the Chapter 11.

The Trustee's position seems to be that in similar circumstances it would be all right for a secured creditor to have *ex parte* relief from stay provided the secured creditor was not a taxing authority. This Court sees no reason a tax lienholder should, under appropriate circumstances, be denied the relief allowed by a properly negotiated, noticed, and court approved cash collateral agreement simply because the debtor's objective, or bankruptcy raison d'étre, shifted from reorganization to liquidation. Furthermore, this Court sees no reason for treating a tax lien creditor entirely and unqualifiedly different than any other secured creditor, who properly exercised (and compromised) its rights to relief from stay in the Chapter 11 case.

■ The Court is also mindful that a creditor with a secured claim is always entitled to "adequate protection" of its lien claim if it allows, or is compelled by Court order to allow, a debtor to use its cash collateral. 11 U.S.C. § 363(a), (c), (d), and (e).[5] That adequate protection is, by definition, to be the "indubitable equivalent" of the lien creditor's

---

**5.** Section 363 sets forth, in part, as follows:

(d) The trustee may use, sell, or lease property under subsection (b) or (c) of this section only to the extent not inconsistent with any relief granted under section 362(c), 362(d), 362(e) or 362(f) of this title.

(e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased,

by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. This subsection also applies to property that is subject to any unexpired lease of personal property (to the exclusion of such property being subject to an order to grant relief from the stay under section 362).

11 U.S.C. § 363(d) and (e).

interests in debtor's property at the onset of the Chapter 11 case.

> When adequate protection is required under section ... 363 ... of this title ..., such adequate protection may be provided by—
>
> .  .  .  .  .
>
> (3) granting such other relief ... as will result in the *realization by such entity of the indubitable equivalent* of such entity's interest in such property.

11 U.S.C. § 361 (emphasis added).

A provision in a Chapter 11 cash collateral or adequate protection agreement, which grants to a tax lien creditor immediate relief from stay on the debtor's default or conversion to Chapter 7, is likely to be an important feature of "adequate protection"; it is a negotiated factor, or element, which accords to the tax lien creditor exactly that to which the lien creditor is routinely entitled—the indubitable equivalent of its lien rights on the day the petition was filed.

The Trustee asserts that the March 16, 1994 Order approving the Cash Collateral Agreement must be modified because it permits the taxing authority to avoid the holding of *In re Life Imaging Corp.*, 131 B.R. 174 (Bankr.D.Colo.1991). In *In re Life Imaging*, the Honorable Roland J. Brumbaugh held that a cash collateral agreement, entered into in a Chapter 11 case, was not binding upon the subsequent Chapter 7 trustee. Judge Brumbaugh distinguished *Life Imaging* from cases in which the courts had held that settlement agreements, entered into during a Chapter 11 case, were enforceable against a Chapter 7 trustee:

> The case at bar involves a cash collateral rather than a settlement agreement, and no policy considerations, such as saving the court and parties from the burdens of trial, are present that would require this court to enforce an agreement that would have the effect of violating the Bankruptcy Code [§ 724(b) ].

*Life Imaging*, 131 B.R. 174, at 177.

This Court respectfully disagrees with that premise, and finds that an agreement, even a cash collateral agreement, entered into by a chapter 11 debtor-in-possession may be enforceable against a subsequently appointed Chapter 7 Trustee, if undertaken in a correct and legally sufficient manner. *See e.g., Armstrong*, 964 F.2d 797, at 801; *Bettis*, 97 B.R. 344, at 347; *Monument Record*, 71 B.R. 853, at 861. Contrary to Judge Brumbaugh's findings, this Court finds that there are significant policy considerations weighing in favor of enforcing such agreements, in addition to those cited above. They include: (1) encouraging a debtor and secured creditors to negotiate and, if possible, settle disputes, particularly cash collateral and adequate protection disputes, amicably, quickly, inexpensively, and effectively, at the onset of a reorganization case, (2) enhancing the prospects for a successful reorganization, at least for a promising debtor acting in good faith, and (3) inducing secured creditors to cooperate with, and accommodate, a struggling debtor-in-possession, in exchange for adequate protection—for the indubitable equivalent—of its secured position.[6]

**C. IS THE CASH COLLATERAL AGREEMENT BETWEEN THE STATE OF COLORADO, AND THE CHAPTER 11 DEBTOR–IN–POSSESSION, IN THE INSTANT CASE, BINDING UPON THE CHAPTER 7 TRUSTEE?**

■ Having answered the first two questions in the affirmative, i.e., that a Chapter 7

---

**6.** The Honorable Gilbert S. Merritt, Chief Circuit Judge, in *In re K.C. Machine & Tool Co.*, 816 F.2d 238, 248 (6th Cir.1987), asserted an additional policy reason behind not enforcing Section 724(b):

> It is a shocking result, and such as justly brings receiverships into disrepute in the popular mind.... Here the Court has extinguished the tax lien of a city, a prior perfected property right, and has redistributed public revenues to a group of Chapter 11 administrative creditors, mainly Detroit law firms, who had no prior security or other perfected priority interest in any of the property of the bankrupt. The lawyers whose unsecured accounts arose in the receivership after the city had perfected its tax liens are given public tax funds.

The problem, recognized by Judge Merritt, is that Section 724(b)'s distribution scheme may help keep Chapter 11 cases alive for the benefit of administrative claimants, and the detriment of tax lienholders, when in reality there is little or no chance of a successful reorganization. This Court believes that Buzzworm may be an example of such a case.

# 513

trustee may be bound by a Chapter 11 cash collateral agreement and such an agreement may modify, or abrogate, Section 724(b), this Court now analyzes whether the particular Cash Collateral Agreement between the State and the Debtor in this case is enforceable.

Important factors weigh in favor of enforcing the subject Agreement, including the contested relief from stay provision. The relief from stay provision in paragraph 6(g) of the subject Agreement was a negotiated term of a freely negotiated and public agreement. It constituted part of the consideration for which the creditor, here, was entitled under the Bankruptcy Code. It was part of the formulation of the "indubitable equivalent" to which the creditor was entitled. Additionally, the creditors in this case elected to not contest the Cash Collateral Agreement with the State when they had, on other occasions, objected to similar agreements.[7] The Agreement is not tainted by fraud, bad faith or misconduct.

However, upon closer scrutiny, this Cash Collateral Agreement fails in one important aspect which prevents the Agreement from being fully effective and enforceable against this Chapter 7 Trustee. It is, in this Court's opinion, beset with a legal insufficiency that requires modification of the Order in this particular situation.

The Agreement, specifically paragraph 6(g), essentially sought a waiver by certain creditors of the rights provided to them in Section 724(b). The Agreement granting summary relief from stay embodies consequences affecting certain creditors which will eliminate their rights under Section 724, if there were to be a conversion to Chapter 7. These rights are provided to creditors as part of the statutory scheme of Chapter 7 and must be specifically, expressly, and knowingly waived.

"[W]aiver is the intentional relinquishment of a known right." [Citation omitted.]

The elements of waiver are (1) the existence at the time of the waiver a right, privilege, advantage, or benefit which may be waived; (2) the actual or constructive knowledge thereof; and (3) an intention to relinquish such right, privilege, advantage, or benefit. Waiver must be express, or, as in this case, implied from conduct. A party may waive any right which it is legally entitled to.... When waiver is implied from conduct, the acts, conduct, or circumstances relied upon to show waiver must make out a clear case.

*In re Sweet*, 954 F.2d 610, 613 (10th Cir. 1992).

This Court finds that the notice to the creditors in this case was not legally sufficient to effect a waiver of the creditors' rights and, therefore, is not binding upon the Chapter 7 Trustee. Although the notice, quoted in relevant part above, was specific as to relief from stay being granted on conversion, it failed in other important aspects. The notice failed to (1) identify which creditors would be affected, (2) identify the right, i.e., the Section 724 right to subordinate the tax lien, to be waived, (3) state clearly that the remedy provided to the State would be summarily granted, *ex parte*, and that such relief from stay was preclusive of the rights which certain creditors would otherwise be entitled to under Chapter 7.

In summary, the notice did not sufficiently and explicitly alert creditors that, in the event the case was converted to Chapter 7, their statutory rights, under 11 U.S.C. § 724(b), would be extinguished in favor of the lien claim and rights of the State. In so finding, this Court does not hold that notice in this situation would require a full, or legally arcane, explanation of Section 724(b). However, reference to that Code section, coupled with a brief statement that certain creditor rights were being supplanted, or abrogated, by the Agreement, would have

---

7. The creditors' process of reviewing and tacitly, if not actually, approving the cash collateral agreements in this case was amply demonstrated by their objections to other cash collateral agreements. For example, the Unsecured Creditors Committee's March 21, 1994 Objection to the Debtor's Joint Stipulation Regarding Use of Cash Collateral, which granted to various secured creditors adequate protection and post-petition liens, alleged that the subject creditors had pre-petition secured claims that were avoidable (pursuant to Sections 547, 548, and 549), deficient, given to insiders, and/or were inappropriately being "validated" by post-petition liens.

largely cured the defect. This Court does hold that the notice, in a circumstance such as this, must be meaningful, explicit, effective, and directed to all appropriate creditors and other parties-in-interest. *See, Bettis,* 97 B.R. 344, at 347. If an agreement seeks to effect what is essentially a waiver of rights of creditors, such notice must be sufficient to enable affected creditors to knowingly and expressly waive their rights.

### III. *CONCLUSION*

This Court concludes that the Trustee has shown sufficient cause, pursuant to Rule 9024, Fed.R.Bankr.P., and Rule 60(b), Fed. R.Civ.P., for this Court to grant the Trustee's Motion to Modify March 16, 1994 Order Approving Joint Stipulation Regarding Use of Cash Collateral. Automatic and immediate relief from the automatic stay, which is a right that a tax lien creditor may acquire in a Chapter 7 cash collateral agreement, or other similar agreement, is not appropriate in this case. The notice on default or conversion to Chapter 7, was not sufficiently meaningful and explicit to allow enforcement of that provision. It would result in an improper waiver or termination of the Estate's rights under Section 724(b).

IT IS, THEREFORE, ORDERED that the Chapter 7 Trustee's Motion to Modify March 16, 1994 Order Approving Joint Stipulation Regarding Use of Cash Collateral is GRANTED. Paragraph 6(g) of the Joint Stipulation Regarding Use of Cash Collateral, approved by Order of this Court dated, March 16, 1994, is not enforceable against the Chapter 7 Trustee.