# In re LIFE IMAGING CORPORATION, Debtor.

## Bankruptcy No. 83 B 1882 J.

United States Bankruptcy Court, D. Colorado.

Aug. 29, 1991.

James R. Martin, Baker & Hostetler, Denver, Colo., for The Medical Admin. Co.

Paul G. Quinn, Denver, Colo., for Chapter 7 trustee for the Estate.

Howard Beck, Beck & Cassinis, Aurora, Colo., for trustee.

Jeffrey Cohen, Cohen & Associates, Denver, Colo., for Raymond Elliott.

John A. Weeda, Special Asst. U.S. Atty., Denver, Colo., for the I.R.S.

Howard Tallman, Holland & Hart, Denver, Colo., for Alton Ochsner Medical Foundation.

## MEMORANDUM OPINION AND ORDER

ROLAND J. BRUMBAUGH, Bankruptcy Judge.

This matter comes before the Court upon the filing of the Trustee's Final Report, objections to that report filed by the law firm Beck and Cassinis, the Medical Administration Company, Mike Shepherd and Raymond Elliott, and the response to such objections filed by the United States of America on behalf of the Internal Revenue Service ("IRS").

The Debtor filed its Chapter 11 bankruptcy petition on May 2, 1983. That same day, but prior in time to the petition, the IRS filed its Notices of Federal Tax Liens totaling $67,582.57. Subsequently, the Debtor, the IRS and other secured creditors entered into a number of cash collateral agreements. These agreements gave the creditors, including the IRS, substitute collateral for their liens. The Debtor's Chapter 11 case was converted to a Chapter 7 on April 26, 1984.

The Trustee's Final Report provides for payment of 100% of the Chapter 7 administrative expenses, including the full amount of the IRS's claim (but not including interest on such claim). There were not sufficient funds remaining in the estate to pay 100% of the Chapter 11 administrative expenses, which included the claims of Beck and Cassinis, Raymond Elliott, Mike Shepherd and the Medical Administration Company. These claims were to be paid pro rata approximately 35%, thus precipitating the objections filed by these Chapter 11 claimants.

Beck and Cassinis asserts that distributions should be made pursuant to 11 U.S.C. § 724(b), which would have the effect of significantly reducing the amount of money distributed to the IRS and increasing the amount distributed to the Chapter 11 claimants. The IRS maintains that the cash collateral agreements transformed its tax lien into a non-tax lien, thus making § 724(b) inapplicable. Alternatively, it argues that if the liens are tax liens, the cash collateral agreements should be enforced despite the application of § 724(b). Additionally, the IRS argues that it is entitled to both § 507(b) superpriority and to postpetition interest on its claim.

## I. APPLICABILITY OF § 724(b)

A. *Did the cash collateral agreements transform the tax liens of the IRS into non-tax liens?*

■ The IRS would have the Court answer this question in the affirmative. The IRS maintains that because the cash collateral agreements gave it a substitute lien, it no longer had a tax lien, but rather an ordinary secured lien. The first cash col-

lateral agreement filed October 11, 1983 stated:

> 4. The Internal Revenue Service alleges it has a valid second security interest in all the equipment, inventory, receivables and proceeds thereof of Life Imaging Corporation.

> 6.D) In order to assure ... the Internal Revenue Service that they have adequate protection, Life Imaging Corporation agrees to give ... the Internal Revenue Service (if they have a valid, perfected lien), ... a substitute lien on all property acquired post-petition by Life Imaging Corporation, including, but not limited to, inventory, equipment, receivables and proceeds thereof of Life Imaging Corporation.

The other cash collateral agreements contained similar provisions giving the IRS a substitute lien. The IRS contends that the tax liens it had pre-petition were transformed by this agreement into a non-tax lien, making § 724(b) inapplicable.

Section 724 is one of the more obtuse sections of the Bankruptcy Code, and it states:

> § 724. **TREATMENT OF CERTAIN LIENS.**

> (a) The trustee may avoid a lien that secures a claim of a kind specified in section 726(a)(4) of this title.

> (b) Property in which the estate has an interest and that is subject to a lien that is not avoidable under this title and that secures an allowed claim for a tax, or proceeds of such property, shall be distributed—

> (1) first, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is senior to such tax lien;

> (2) second, to any holder of a claim of a kind specified in section 507(a)(1), 507(a)(2), 507(a)(3), 507(a)(4), 507(a)(5), or 507(a)(6) of this title, to the extent of the amount of such allowed tax claim that is secured by such tax lien;

> (3) third, to the holder of such tax lien, to any extent that such holder's allowed tax claim that is secured by such tax lien exceeds any amount distributed under paragraph (2) of this subsection;

> (4) fourth, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is junior to such tax lien;

> (5) fifth, to the holder of such tax lien, to the extent that such holder's allowed claim secured by such tax lien is not paid under paragraph (3) of this subsection; and

> (6) sixth, to the estate.

> (c) If more than one holder of a claim is entitled to distribution under a particular paragraph of subsection (b) of this section, distribution to such holders under such paragraph shall be in the same order as distribution to such holders would have been other than under this section.

> (d) A statutory lien the priority of which is determined in the same manner as the priority of a tax lien under section 6323 of the Internal Revenue Code of 1954 (26 U.S.C. § 6323) shall be treated under subsection (b) of this section the same as if such lien were a tax lien.

The effect of this section is to subordinate tax liens to the priorities established by § 507(a)(1) through § 507(a)(6). Under this section, distributions will be made first to secured lien holders; second, to § 507(a)(1) through (6) creditors *up to the amount of the tax lien;* third, to the tax lien creditor for any amounts over what was distributed to § 507 creditors above; fourth, to junior lien holders; and fifth, to the tax lien creditor, any amounts not paid in # 3 above.

The IRS in its memorandum brief states that its *substitute* lien is a "creation of the Bankruptcy Code" and not a *tax lien* under 26 U.S.C. § 6323. The IRS maintains that § 724(d) "in effect, defines an IRS tax lien as one under section 6323 of the Internal Revenue Code." This statement implies that only a lien arising by operation of 26 U.S.C. § 6323 can be a "tax lien" for purposes of § 724 as a whole. Section 724(b) does not so limit its application. Section 724(b) refers to a lien "that secures an allowed claim for a tax." It does not define a tax lien as one created by 26 U.S.C.

§ 6323. Thus, even though the IRS may have a substitute lien, it is still a lien "that secures an allowed claim for a tax," and § 724(b) will apply.

B. *Should the cash collateral agreements be enforced, despite the application of § 724(b)?*

■ The IRS asserts that even if § 724(b) applies, the cash collateral agreements should be enforced, essentially giving the cash collateral agreements precedence over § 724 of the Bankruptcy Code. The IRS cites the case of *In re American Plastics Corp.,* 102 B.R. 609 (Bkrtcy. W.D.Mich 1989) in support of this assertion. That case involved a settlement agreement which resolved an adversary proceeding and was decided on policy grounds. That court stated

It is well established that settlement agreements are highly favored. Settlement agreements should therefore be upheld whenever equitable and policy consideration so permit. By such agreements are the burdens of trial spared to the parties, to other litigants waiting their turn before over-burdened courts, and to the citizens whose taxes support the latter.

The case at bar involves a cash collateral rather than a settlement agreement, and no policy considerations, such as saving the court and parties from the burdens of trial, are present that would require this court to enforce an agreement that would have the effect of violating the Bankruptcy Code. This Court will not enforce the cash collateral agreements in violation of § 724(b).

## II. SECTION 507(b) SUPERPRIORITY

■ The IRS asserts that, despite the application of § 724(b), it should be given a superpriority under § 507(b) because it will not be receiving the full value of its adequate protection under the cash collateral agreement. Section 507(b) states:

If the trustee, under section 362, 363, or 364 of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a claim al-

lowable under subsection (a)(1) of this section arising from the stay of action against such property under section 362 of this title, from the use, sale, or lease of such property under section 363 of this title, or from the granting of a lien under section 364(d) of this title, then such creditor's claim under such subsection shall have priority over every other claim allowable under such subsection.

The trustee's final report indicates that he has a total of $161,222.09 for distribution. The proposed distribution was to pay the Chapter 7 administrative expenses, which includes the IRS lien of $67,582.57, in full. If it were not for the application of § 724(b), the IRS would receive payment of 100% of its claim; i.e., there would be no failure of adequate protection. Unfortunately for the IRS, as the Court has found, § 724(b) does apply, necessitating payment to the IRS of less than the full amount of its claim.

At first blush it would appear that, in the circumstance of a taxing authority having a § 507(b) superpriority, there is a conflict in the Bankruptcy Code between § 724(b) and § 507(b). The IRS asserts in effect that § 507(b) should have precedence over § 724(b). However, in the case at bar, no such conflict exists. Section 507(b) gives a superpriority when the value of the creditor's collateral is diminished because of "... the stay of action against such property under section 362 ..." But in this case the value of the IRS's collateral was not diminished because of the stay under § 362; rather, the IRS is receiving less than the full amount of its claim because of § 724(b). Section 507(b) requires that the diminution in value be as a result of the stay of § 362.

Therefore, this Court finds that the IRS is not entitled to a § 507(b) superpriority.

## III. POST–PETITION INTEREST

The question of post-petition interest payable to the IRS is moot because of the previous findings herein. Even if this Court found that the IRS was entitled to post-petition interest, the subordination

178

provision of § 724(b) would preclude any increase in distribution.

ORDERED that the objections to the Trustee's Final Report are sustained.