In re BINO'S INC., Debtor.

Bankruptcy No. 95 B 01036.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

April 26, 1995.

James D. Newbold, Asst. Atty. Gen., Revenue Litigation Div., Chicago, IL, for State.

Diane Graham, Office of U.S. Trustee, Chicago, IL, for Office of U.S. Trustee.

## MEMORANDUM OPINION–OBJECTION TO CASH COLLATERAL ORDER

JOHN D. SCHWARTZ, Chief Judge.

This matter comes before the court upon the United States Trustee's ("Trustee") Objection to the Interim Cash Collateral Order ("Order") entered on February 24, 1995. The Order contains, among other things, an agreement between Bino's, Inc. ("Debtor"), and the Illinois Department of Revenue ("IDR") and the Internal Revenue Service ("IRS") (collectively "Taxing Authorities") providing for the consensual use of cash collateral and the adequate protection of the Taxing Authorities' liens. A Response to the Objection was filed by the IDR. The Debtor did not file a response to the Trustee's Objection.

The Trustee's Objection stems from a provision in the Order granting the Taxing Authorities a superpriority administrative claim pursuant to § 507(b).[1] The claimed superpriority encompasses all of the value of the property secured by the liens of the Taxing Authorities that might become subordinated under the provisions of § 724(b). The Trustee contends that the terms of the Order impermissibly grant the Taxing Authorities a superpriority administrative claim pursuant to § 507(b) that overrides the provisions of § 724(b) in the event that this case is converted to a Chapter 7 proceeding. The court concludes that the Trustee's contentions are correct and sustains the Objection.

### I. JURISDICTION

The court has jurisdiction to entertain this objection pursuant to 28 U.S.C. § 1334, Fed. R.Civ.P. 59(e), and general rule 2.33(A) of the General and Civil Rules of the United States

---

1. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## II. BACKGROUND

The Debtor, a restaurant operator, commenced a voluntary Chapter 11 proceeding on January 18, 1995, and has continued its operations as debtor-in-possession. The Taxing Authorities hold tax claims constituting a significant portion of the priority debt of the Debtor. At the time of the Chapter 11 filing, $19,742.70 of the total amount owed to the IDR was secured by prepetition statutory liens. These liens attached to all of the Debtor's property, including all cash and cash equivalents. *See* 35 ILCS 5/1101 (withholding tax), 35 ILCS 120/5a (occupation/use tax). In addition, amounts owed to the United States are secured by prepetition liens on the Debtor's property obtained pursuant to 26 U.S.C. § 6621. However, the IRS has yet to file a proof of claim so the amount and nature of its claims are unknown.

On February 8, 1995, the IDR presented a Motion to Prohibit the Use of Cash Collateral, Identify and Pay Over Trust Fund Taxes and to Convert the Case to Chapter 7. In response to this Motion, the Debtor and the IDR agreed to the terms of the Order. The Order authorizes the use of cash collateral to pay postpetition expenses incurred in the ordinary course of the Debtor's business and grants the Taxing Authorities replacement liens on all of the assets of the Debtor. The term of the Order which is the center of dispute states:

> To the extent that the collateral in which the IDR and the IRS claim an interest is diminished by allowing the debtor-in-possession to use the cash collateral and other assets and the protection provided for herein is not adequate to protect the interests of the IDR and the IRS as of the petition date, the IDR and IRS shall be granted a superpriority administrative claim pursuant to § 507(b). For purposes of this order, the conversion of this case to Chapter 7 *and the tax lien subordination provisions of § 724(b) shall be deemed to be a failure of adequate protection* and the IDR and the IRS *shall be entitled to a*

> *superpriority administrative claim pursuant to § 507(b) to the extent that the liens of the IDR and IRS may be subject to subordination pursuant to § 724.*

Order Providing For Interim Use of Cash Collateral, February 24, 1995, ¶ D (emphasis added).

A copy of the Order was served on the Debtor's creditors pursuant to Fed. R.Bankr.P. 4001. Creditors and parties-in-interest were informed that a hearing concerning the continued use of collateral would be held on March 14, 1995 and that objections would be heard at that time. The Trustee was the only party to object to the Order.

## III. DISCUSSION

The central issue presented in the Trustee's Objection is whether the cash collateral agreement embodied in the Order may grant the Taxing Authorities § 507(b) superpriority status to the extent that their claims may be subject to subordination under § 724(b). The Trustee argues that the unequivocal language of § 724(b) precludes the enforcement of the terms of the Order. In addition, the Trustee asserts that § 507(b) can not operate to elevate an entire secured claim to superpriority status where the collateral has not actually diminished in value due to its use or the operation of the automatic stay. It is only where the value of the collateral has declined due to the failure of adequate protection that a § 507(b) superpriority may arise.

The IDR argues that the cash collateral agreement contained in the Order is valid even though it may result in a violation of the distribution scheme set forth in § 724(b). The IDR further contends that the only way to provide the Taxing Authorities with adequate protection is to provide each with the "indubitable equivalent" of its lien interests by granting it superpriority status under § 507(b) if those lien interests are subordinated by § 724(b). As an aid in discussing this complex issue, the court shall analyze the questions presented as follows:

A. Should the agreement between the Debtor and the Taxing Authorities contained in the Order be enforced even if it

may result in a direct violation of the subordination provisions of § 724(b)?

B. Can the application of § 724(b) constitute a failure of adequate protection which entitles the Taxing Authorities to an administrative superpriority pursuant to § 507(b).

## A. *AVOIDANCE OF § 724(b) DISTRIBUTION SCHEME*

■ The first question presented in this case may be boiled down to the simple issue of whether the Debtor and the Taxing Authorities may use a cash collateral order to bargain away the tax lien subordination provisions of § 724(b) in the event the case is converted to a Chapter 7. The court holds that the parties to the Order may not effectively bargain away the rights provided to priority claimants by Congress in § 724(b) of the Bankruptcy Code.

### 1. *Operation of § 724(b)*

■ The effect of § 724(b) is to allow a Chapter 7 trustee to liquidate property subject to tax liens and distribute the proceeds to the priority claimants enumerated in § 507(a)(1) through § 507(a)(6) prior to any distribution to taxing authorities. *See 4 Collier on Bankruptcy,* ¶ 724.03 pp. 724–6 (15th ed.). Section 724(b) provides:

(b) Property in which the estate has an interest and that is subject to a lien that is not avoidable under this title and that secures an allowed claim for a tax, or proceeds of such property, shall be distributed—

(1) first, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is senior to such tax lien;

(2) second, to any holder of a claim of a kind specified in section 507(a)(1), 507(a)(2), 507(a)(3), 507(a)(4), 507(a)(5), or 507(a)(6) of this title, to the extent of the amount of such allowed tax claim that is secured by such tax lien;

(3) third, to the holder of such tax lien, to any extent that such holder's allowed tax claim that is secured by such tax lien exceeds any amount distributed under paragraph (2) of this subsection;

(4) fourth, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is junior to such tax lien;

(5) fifth, to the holder of such tax lien, to the extent that such holder's allowed claim secured by such tax lien is not paid under paragraph (3) of this subsection; and

(6) sixth, to the estate.

In effect, a priority claimant is allowed to "step into the shoes of the tax collector." H.R.Rep. 595, 95th Cong., 1st Sess. 382 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6338. The rights and claims of both senior and junior lienors and the holders of non-priority unsecured claims are left undisturbed. *Id.*

■ The only parties affected by the operation of § 724(b) are the priority claimants and the tax lien creditors. *4 Collier on Bankruptcy,* ¶ 724.03, pp. 724–6. Section 724(b)(2) subordinates the claims of a tax lien holder, up to the amount of its lien, to the claims of the kind specified in §§ 507(a)(1)–(6). Section 724(b) allows a trustee to use the liquidated value of the collateral securing the tax lien to satisfy these priority creditors. *See 4 Collier on Bankruptcy,* ¶ 724.03, pp. 724–6–8. If such priority creditors do not entirely deplete the tax lien, the holder of the tax lien is, of course, entitled to the remaining proceeds. § 724(b)(3). Although § 724(b) is not presently applicable, the Order's grant of replacement liens to the Taxing Authorities, as well as the provision of the Order providing for the waiver of § 724(b), makes necessary a consideration of what may happen if a conversion to Chapter 7 occurs.[2]

### 2. *Specific Language and Legislative History of § 724(b)*

■ A plain reading of § 724(b) supports the Trustee's argument that a cash collateral

---

2. Pursuant to § 1112, the Debtor has a right to convert this case from Chapter 11 to Chapter 7 if it so desires.

agreement contained in an order of a court may not override the subordination provisions of § 724(b). As the Trustee asserts, the relevant language is unequivocal and contains no exceptions for a case converted from Chapter 11 to Chapter 7. The IDR does not dispute a literal reading of the statute.

■ The legislative history of § 724(b) may be traced back to § 67c(3) of the Bankruptcy Act. Section 724(b) was derived from § 67c(3) "without substantial modification in result." H.R.Rep. No. 595, 95th Cong., 1st Sess. 382 (1977). The policy behind § 724(b), as was the policy of § 67c(3), is to postpone or subordinate the payment of taxes secured by tax liens for the protection of certain administrative costs and other priority claims. *In re Granite Lumber Company*, 63 B.R. 466, 470 (Bankr.D.Mont.1986). The legislative history indicates that Congress made a policy decision to favor the claims of wage earners, the costs of administration of the estate, and other priority claims over tax liens. H.R.Rep. No. 686, 89th Cong., 1st Sess. (1965), U.S.Code & Admin.News at 2442, 2462. Nowhere does the legislative history of § 724(b) discuss the potential for parties to waive § 724 or the ability of interested parties to contract its provisions out of the Code.

### 3. *Relevant Case Law*

There is a paucity of case law with respect to the question presented in this case and the holdings of the cases that have addressed the issue conflict with one another. In *In re Life Imaging Corp.*, 131 B.R. 174 (Bankr.D.Colo. 1991), the court essentially held that a cash collateral order may not be enforced if it violates the subordination provisions of § 724(b). *See Life Imaging*, 131 B.R. at 177. In contrast, the holding of *In re Buzzworm, Inc.*, 178 B.R. 503 (Bankr.D.Colo.1994), was that a cash collateral order may avoid the distribution scheme of § 724(b) under the right circumstances. *See Buzzworm*, 178 B.R. at 513.

*Life Imaging* is factually similar to the present case in that it involved a cash collateral order containing agreements entered into by a Chapter 11 debtor and the IRS, as well as § 507(b) superpriority issues. The

agreements gave the IRS substitute collateral for its liens. The IRS argued, as the IDR does in the present case, that the court should enforce the cash collateral order despite the operation of § 724(b). *Life Imaging*, 131 B.R. at 175. The court found that the IRS's argument was nothing more than an attempt to give the cash collateral order precedence over § 724(b) and summarily rejected the argument. *Id.* at 177. The court also found that no policy considerations, such as avoiding the burdens of trial, existed to justify enforcing "an agreement that would have the effect of violating the Bankruptcy Code." *Id.*

This court agrees with the plain reading given to § 724(b) in *Life Imaging*. Although the precise distribution order of tax liens pursuant to § 724(b) is initially difficult to grasp, there can be no doubt that the purpose of the statute is to subordinate tax liens to the interests of other priority creditors. The subordination of tax liens can result in harsh treatment for taxing authorities, but the congressional intent is clear. "If the statute is clear and unambiguous 'that is the end of the matter, for the court ... must give effect to the unambiguously expressed intent of Congress' ...'" *Board of Governors, FRS v. Dimension Financial Corp.*, 474 U.S. 361, 368, 106 S.Ct. 681, 685, 88 L.Ed.2d 691 (1986) *quoting Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–843, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). Cash collateral agreements that effectively operate to take precedence over § 724(b) are unenforceable.

The *Buzzworm* court, however, reached a different conclusion. The debtor in *Buzzworm* entered into a cash collateral agreement with the Colorado Department of Revenue ("CDR") which granted the CDR summary relief from the automatic stay upon conversion of the case to Chapter 7. *Buzzworm*, 178 B.R. at 505. After conversion, the Chapter 7 trustee argued that enforcing the cash collateral order would violate the distribution provisions of § 724(b) since the CDR's tax lien was bound by those provisions. *Id.*

The *Buzzworm* court held that a Chapter 11 cash collateral order may modify the stat-

utory provisions of § 724(b) under the right circumstances. In contrast to the court in *Life Imaging,* the *Buzzworm* court found that significant policy reasons existed for the enforcement of such cash collateral orders. The policy considerations included encouraging negotiation and settlement of disputes, enhancing the prospects for successful reorganization, and inducing secured creditors to cooperate with a debtor. *Buzzworm,* 178 B.R. at 513. These general justifications are pervasive throughout the Bankruptcy Code and do not require a heightened scrutiny when considering § 724. However, in this case, the intent of Congress is clear. There is no provision in the Code making the application of § 724(b) discretionary for the judiciary or for the parties involved.

Although the *Buzzworm* court found that a cash collateral order may modify § 724(b), it further held that the specific cash collateral order covering the debtor and the CDR was not enforceable because the notice to the creditors was not sufficient to effect a waiver. *Buzzworm,* 178 B.R. at 513. This court concurs with the *Buzzworm* court's decision that the issue of waiver presents a significant impediment to enforcement of cash collateral orders requiring a waiver of rights under § 724(b) in the event of a conversion to Chapter 7. However, while the *Buzzworm* court held that a waiver may be effective under the right circumstances, this court can find no circumstances under which all potential priority claimants under § 724(b) may effectively waive their rights.

 A waiver is the "intentional relinquishment of a known legal right." *In re Garfinkle,* 672 F.2d 1340, 1347 (11th Cir. 1982). A necessary element of waiver is the existence of the right to be waived at the time of the waiver. *Garfinkle,* 672 F.2d at 1347. The subordination provisions of § 724(b), and therefore the rights of priority claimants under that Code section, come into operation only upon the distribution of the collateral secured by tax liens. *In re K.C. Machine & Tool Co.,* 816 F.2d 238, 245 (6th Cir.1987). If the rights of the priority claimants under § 724(b) do not exist until the time of distribution, they can only be intentionally waived by a cash collateral order with great difficulty, if at all. Accordingly, the Taxing Authorities can not timely effect a waiver of the rights of the priority claimants in this Chapter 11 case.[3]

## B. Section § 507(b) Administrative Superpriority

 The IDR asserts that the Taxing Authorities must be given a § 507(b) superpriority for the entire amount of their claims as adequate protection for the Debtor's use of cash collateral. While the court appreciates the difficulties encountered by the Taxing Authorities when attempting to secure adequate protection in the face of § 724(b) subordination, § 507(b) clearly does not provide the Taxing Authorities with a superpriority under the terms of the Order. Section 507(b) provides:

b) If the trustee, under section 362, 363, or 364 of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(1) of this section *arising from the stay of action against such property under section 362* of this title, from the use, sale, or lease of such property under section 363 of this title, or from the granting of a lien under section 364(d) of this title, then such creditor's claim under such subsection shall have priority over *every other claim allowable under such subsection.* (emphasis added).

A superpriority is granted to the extent the value of the collateral is diminished as a

---

3. The impracticability of providing notice to all potential priority claimants also presents difficulties. As an example, wage earners may be priority claimants pursuant to § 507(a)(3) and therefore entitled to notice that their potential rights under § 724(b) may be eliminated. Would proper notice require the posting of notices in all employee washrooms stating that their chances of getting paid are subject to taxing authorities rights to a superpriority claim? One need hardly imagine the effect such notice would have on employee morale or on the chances of a successful reorganization and it would be questionable if such would constitute sufficient notice. Further, would it be necessary to obtain a written waiver from all persons doing business with a debtor?

**790**

result of the automatic stay of § 362. *Life Imaging,* 131 B.R. at 177.

If the Taxing Authorities were faced with a diminution in the value of their collateral resulting from the automatic stay, they would be entitled to § 507(b) superpriority. However, what the Taxing Authorities essentially seek is a superpriority for the entire amount of their tax liens because § 724(b) may result in the subordination of that amount of their claims. Section 507(b) does not permit a superpriority for a diminution in value due to the distribution scheme of § 724(b). *Id.* The Taxing Authorities' argument is with Congress and not with the courts. Therefore, the court holds that the term of the Order providing the Taxing Authorities with a § 507(b) superpriority to the extent that their liens may be subject to subordination pursuant to § 724(b) is unenforceable.

## IV. CONCLUSION

The Trustee's Objection is sustained. The Order creates violations of the subordination provisions of § 724(b) and impermissibly grants the Taxing Authorities a § 507(b) superpriority for the entire amount of their tax liens.