**In re HOWARD FURNITURE, INC.**

**Bankruptcy No. 96–21048.**

United States Bankruptcy Court,
N.D. Mississippi.

April 2, 1998.

Gregory D. Keenum, Booneville, MS, for Howard Furniture, Inc.

Ralph M. Dean, III, Assistant U.S. Attorney, Oxford, MS, for Internal Revenue Service.

R. Michael Bolen, Senior Attorney, Office of United States Trustee, Jackson, MS, for United States Trustee.

Jacob C. Pongetti, Columbus, MS, Chapter 7 Trustee.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

This matter comes before the court on a motion to disburse sales proceeds filed by the United States of America—Internal Revenue Service (hereinafter "IRS"); objections thereto having been filed by the Office of the United States Trustee (hereinafter "U.S. Trustee") and the Chapter 7 case trustee (hereinafter "trustee"); the court having reviewed and considered the motion, the responses thereto, as well as, the memoranda submitted by the respective parties hereby finds as follows, to-wit:

### I.

The court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (E), and (O).

### II.

This case was originally filed under Chapter 11 of the Bankruptcy Code on March 20, 1996. On September 19, 1996, the debtor-in-possession filed a motion to sell a three acre tract of unimproved real property for $17,-000.00. The alleged purpose of the sale was to generate income to finance the debtor's day to day business operations. At the time the motion was filed, the attorney for the debtor-in-possession was unaware that the IRS had filed a notice of federal tax lien with the Chancery Clerk of Itawamba County on December 14, 1995. The U.S. Trustee objected to the motion because the debtor contemplated using the proceeds in its day to day operations. The U.S. Trustee and the debtor-in-possession agreed to a resolution of their dispute. However, before an

agreed order could be entered, the IRS contacted the court with an objection to the proposed sale. Following a telephonic conference, an agreed order was entered authorizing the debtor-in-possession to sell the property for the appraised value of $17,000.00. The proceeds were to be placed in an escrow account, and the debtor-in-possession's attorney was required to approve any distributions therefrom. The order provided that "no funds shall be removed from said account except for payment of ad valorem taxes or other liens attached to the property." In addition, the order provided that "all proceeds shall be held until all monthly reports are properly filed by the debtor-in-possession and until the trustee has had time to examine the same and will be allowed ample time to object and (sic) release the funds to the debtor."

An agreed order was subsequently submitted by the parties in order to correct an omission and a typographical error in the original order. The amended order added language which provided that the first lien holder on the property, Deposit Guaranty National Bank, would be paid the sum of $5,394.71, plus interest from the sale proceeds. In addition, the amended order reduced the amount due the appraiser from $500.00 to $499.00. Finally, the amended order corrected an error in a sentence to read "until the trustee has had time to examine the same and will be allowed ample time to object *to any* [and] release *of* the funds to the debtor." [1] The proceeding memo entered by the court following the telephonic hearing provided that the motion to sell will be approved subject to the following conditions: 1. ad valorem taxes will be paid from the sale proceeds, 2. the appraiser will be paid from sale proceeds, 3. the balance of proceeds is to be placed in an escrow account and each party will assert claims thereto, including the potential claim of the IRS as a result of its federal tax lien.

Attached as an exhibit to the memorandum submitted by the IRS is an affidavit of Gregory D. Keenum, attorney for the former debtor-in-possession, now debtor. In the affidavit, Keenum states that the property was sold for the sum of $17,000.00. From the proceeds, $5,396.12 was paid to Deposit Guaranty National Bank, $499.99 was paid to Jeff Short for his appraisal, $314.77 was paid to the Itawamba County Tax Collector for 1996 taxes, $271.23 was paid to the Chancery Clerk for 1995 taxes, and city taxes for both 1995 and 1996 were paid to the City of Fulton in the total sum of $843.41, leaving a balance of $9,647.48, in Keenum's escrow account.

On January 28, 1997, the case was converted to Chapter 7. The IRS then filed the subject motion to disburse the balance of the proceeds being held by Keenum. The Chapter 7 trustee and the U.S. Trustee objected to the motion alleging that 11 U.S.C. § 724(b) [2] allows the trustee to subordinate the IRS tax lien on the proceeds so that the funds may be used to satisfy designated priority claims.

### III.

The first issue to be determined is whether the proceeds of the sale became a part of the Chapter 7 estate upon conversion. In order to invoke § 724(b), the Chapter 7 trustee must first establish that the proceeds are "property in which the estate has an interest." The IRS points to the following language in the amended agreed order which authorized the sale of the property:

> That the attorney for the debtor-in-possession is authorized to pay the expenses of said sale from receipt of proceeds being more specifically the note with Deposit Guaranty National Bank, the appraisal by Jeff Short in the amount of $499.00, and all past due ad valorem taxes *and other liens against the property.* (emphasis added)

The IRS argues that the court authorized sale of the property free and clear of liens operated as an abandonment of the asset from the Chapter 11 estate. The IRS further contends that once the sale was completed and the orders were entered directing

---

1. Brackets indicate a deletion and underlining indicates additions.

2. All further statutory citations are to the United States Bankruptcy Code unless otherwise indicated.

that all liens be paid, nothing remained to be done in the Chapter 11 estate relative to the real property or the sales proceeds. Accordingly, when the case was converted to Chapter 7, the sale proceeds remaining in Keenum's escrow account did not become a part of the Chapter 7 estate.

The court has closely reviewed the motion to sell, as well as, the two subsequent orders. None of the documents contains any language regarding an abandonment of the property or the sales proceeds from the bankruptcy estate. Indeed, the original motivation for filing the motion was to generate funds to be used in the day to day operations of the debtor. The court has been provided with no authority to suggest that a sale free and clear of liens is a "de facto abandonment" of the subject property or the proceeds realized therefrom.

Section 541(a) provides that the commencement of a case creates an estate comprised of property, wherever located and by whomever held, including all legal or equitable interests of the debtor in property including proceeds therefrom. *See,* 11 U.S.C. § 541(a)(1) and (6).

Section 348 provides that the conversion of a case constitutes the entry of an order for relief under the chapter to which the case is converted, but does not change the effective date of the filing of the petition, or the effective date of the original order for relief. As such, § 348 requires the court to consider the case as if it had been filed originally under Chapter 7. At the time of the conversion, the proceeds from the sale of the real property were in the possession of the debtor's attorney. These funds were not abandoned from the estate. Accordingly, it is the opinion of the court that the balance of the proceeds held by Attorney Keenum became property of the Chapter 7 estate upon conversion.

The IRS did not attempt to enforce its lien rights prior to conversion. Had it done so, the aforementioned conclusion would likely be different. The court hastens to add, however, that these funds remain subject to the IRS lien even though they are now property of the Chapter 7 estate.

## IV.

Having concluded that the proceeds in question are a part of the Chapter 7 estate, but still subject to the IRS lien, the court must determine if § 724(b) may be used by the Chapter 7 trustee to subordinate the IRS lien so that the funds may be used by the trustee to pay certain priority claims. For reference purposes, § 724(b) provides as follows:

(b) Property in which the estate has an interest and that is subject to a lien that is not avoidable under this title and that secures an allowed claim for a tax, or proceeds of such property, shall be distributed—

(1) first, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is senior to such tax lien;

(2) second, to any holder of a claim of a kind specified in section 507(a)(1), 507(a)(2), 507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of this title, to the extent of the amount of such allowed tax claim that is secured by such tax lien;

(3) third, to the holder of such tax lien, to any extent that such holder's allowed tax claim that is secured by such tax lien exceeds any amount distributed under paragraph (2) of this subsection;

(4) fourth, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is junior to such tax lien;

(5) fifth, to the holder of such tax lien, to the extent that such holder's allowed claim secured by such tax lien is not paid under paragraph (3) of this subsection; and

(6) sixth, to the estate.

A concise explanation of the effect of § 724(b) may be found in *In re Bino's, Inc.,* 182 B.R. 784 (Bankr.N.D.Ill.1995):

The effect of § 724(b) is to allow a Chapter 7 trustee to liquidate property subject to tax liens and distribute the proceeds to the priority claimants enumerated in § 507(a)(1) through § 501(a)(6) prior to any distribution to taxing authorities ...

The only parties affected by the operation of § 724(b) are the priority claimants and the tax lien creditors. See 4 Collier on Bankruptcy, ¶ 724.03, pp. 724–6. Section 724(b)(2) subordinates the claims of a tax lien holder, up to the amount of its lien, to the claims of the kind specified in § 507(a)(1)–(6). Section 724(b) allows a trustee to use the liquidated value of the collateral securing the tax lien to satisfy these priority creditors. See 4 Collier on Bankruptcy, ¶ 724.03, pp. 724–6–8. If such priority creditors do not entirely deplete the tax lien, the holder of the tax lien is, of course, entitled to the remaining proceeds. § 724(b)(3) ... The legislative history indicates that Congress made a policy decision to favor the claims of wage earners, the costs of administration of the estate, and other priority claims over tax liens. H.R.Rep. No. 686, 89th Cong., 1st Sess. (1965), U.S.Code & Admin.News at 2442, 2462.

*In re Bino's,* 182 B.R. at 787–90.

Although it is clear that § 724(b) allows the subordination of tax liens to the payment of certain priority claims, courts have differed on when a Chapter 7 trustee may invoke § 724(b). Some courts have held that § 724(b) should be invoked by a Chapter 7 trustee whenever possible. *See, Wurst v. City of New York (In re Packard Properties, Ltd.),* 112 B.R. 154 (Bankr.N.D.Tex.1990); *In re Darnell,* 834 F.2d 1263 (6th Cir.1987). Under this view, § 724(b) is considered to reflect a Congressional policy to allocate the costs of administration of the estate to the holders of tax liens, rather than to the general unsecured creditors. "If the court declines to allow the trustee to avoid liens potentially avoidable under § 724(b), the result is to transfer the burden of case administration from tax lien claimants to general unsecured creditors." *Colliers,* ¶ 724.03[3][b], (15th Ed. Revised 1997).

■ Other courts have essentially read a "marshaling of assets" requirement into § 724(b) by holding that it should be invoked only when insufficient funds exist with which to pay administrative and priority claims. *In re Dowco Petroleum, Inc.,* 137 B.R. 207 (Bankr.E.D.Tex.1992); *In re Granite Lum-*ber, 63 B.R. 466 (Bankr.D.Mont.1986). The latter approach is favored by *Colliers:*

> While § 724(b)(2) provides for a subordination of tax liens to priority claims, § 724(b)(5) gives back to the tax lien holder a "replacement lien" on the same property that is junior to existing liens. If Congress had intended that tax lien claimants were to bear the cost of administration of the Chapter 7 estate, it would not have permitted the tax lien claimant to recoup its losses from any excess equity in the property. It would have relegated the displaced tax lien to the status of an unsecured claim. Instead, the tax lien claimant was given the right to be paid ahead of general unsecured creditors and other § 507(a)(8) priority claimants out of any equity in the property. Accordingly, § 724(b) should be invoked only when necessary for payment of administrative and priority claims.

¶ *Colliers,* 724.03[3][b] (15th Ed. Revised 1997).

This court finds the latter alternative to be preferable. The Chapter 7 trustee may subordinate the federal tax lien in this case if insufficient funds exist with which to pay the § 507(a)(1)–(7) claims. The total amount of funds available for distribution has not yet been finally determined. The IRS may well be entitled to a distribution if its lien attaches to excess proceeds in the hands of the trustee.

## V.

In summary, the court concludes that the balance of the sale proceeds held by the debtor's attorney on the date of conversion became property of the Chapter 7 estate subject to the IRS lien. The court further concludes that the Chapter 7 trustee may invoke § 724(b) to subordinate the IRS tax lien in order to pay § 507(a)(1)–(7) claims. The motion to disburse funds filed by the IRS is not well taken at the present time and will be overruled. Whether the IRS receives a distribution because of its tax lien must await the trustee's final report and accounting. If the § 507(a)(1)–(7) claims can be paid in full, the IRS may ultimately receive a distribution from excess funds in the posses-

799

sion of the trustee. This question must be answered subsequently and will depend on whether the tax lien attaches to the said excess funds.

An order will be entered contemporaneously with the entry of this opinion.